UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL MAROM,

                Plaintiff,

-against-

TOWN OF GREENBURGH, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

20-CV-03486 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Michael Marom ("Plaintiff"), proceeding *pro se*, brings this action against the former Westchester County District Attorney, Anthony Scarpino, Jr. ("DA Scarpino"), Assistant District Attorney Cortney Johnson ("ADA Johnson," and collectively, "DA Defendants"), the Town of Greenburgh ("Town"), Detective Ed Demalo ("Demalo," and collectively, "Town Defendants"), Mark Gordon ("Gordon"), and Audrey Pierot ("Pierot"). (Doc. 8, "Am. Compl."). Plaintiff presses five claims for relief: (1) a petition for a writ of mandamus directing DA Scarpino to investigate alleged violations of federal criminal statutes associated with Plaintiff's prosecution; (2) a petition for a writ of mandamus compelling DA Scarpino to prosecute ADA Johnson, Demalo, and Pierot for violating federal criminal law;[1] (3) a claim against ADA Johnson for misconduct in violation of New York Judiciary Law § 487; (4) claims for malicious prosecution against the Town Defendants and Gordon under 42 U.S.C. § 1983 and New York State law; and (5) a *Monell* claim against the Town concerning the deprivation of his constitutional rights. (*Id.* at

---

[1] Although the heading for the second claim for relief reflects that it is "Against Audrey Pierot, Ed Demalo, and Courtney Johnson," Plaintiff requests that the Court "issue a writ of mandamus compelling DA Anthony Scarpino, Jr. to carry [sic] his duties . . . ." (Am. Compl. ¶¶ 26-30). As such, the Court construes the claim to seek relief against DA Scarpino, only.

5-20).[2] The Town Defendants filed Answers to the Amended Complaint on July 2, 2020. (Doc. 22 (Town); Doc. 23 (Demalo)). Based upon a review of the docket, it does not appear that Pierot was ever served.[3]

There are two motions to dismiss pending presently before this Court. The first motion, Gordon's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), was docketed on July 31, 2020. (Doc. 32, "Gordon Br."). Plaintiff's opposition to Gordon's motion was docketed on August 9, 2020 (Doc. 33, "Gordon Opp."), and Gordon's motion was fully briefed with the docketing of Gordon's Affirmation in Further Support of the Motion to Dismiss, his reply brief, on September 22, 2020 (Doc. 39, "Gordon Reply"). The second motion, the DA Defendants' motion (which also seeks dismissal under Federal Rule of Civil Procedure 12(b)(6)), was filed on October 6, 2020. (Doc. 42; Doc. 45, "DA Br.").[4] Plaintiff opposed that motion on November 9, 2020 (Doc. 47, "DA Opp."), and the briefing associated with that motion was completed with the submission of the DA Defendants' reply memorandum of law on November 18, 2020 (Doc. 48, "DA Reply").

For the reasons set forth below, the Court GRANTS both Gordon's and the DA Defendants' motions to dismiss.

---

[2] The Court cites herein to the specific paragraphs of the Amended Complaint when possible. However, the Amended Complaint contains instances of misnumbering—for example, Paragraph 30 is followed by Paragraph 30 and Paragraph 69 is followed by Paragraph 54. (Am. Compl. at 8, 18). As such, the Court will cite to the pagination generated by ECF when necessary.

[3] It does not appear that Plaintiff presses any claim for relief against Pierot. (*See generally* Am. Compl.).

[4] In support of their motion to dismiss, the DA Defendants' counsel submitted a Declaration attaching a copy of the Amended Complaint as Exhibit A and a certified copy of a Certificate of Conviction reflecting Plaintiff's conviction of Criminal Contempt in the Second Degree in the Greenburgh Town Court, an extraneous document, as Exhibit B. (*See* Docs. 43, 43-1, 43-2). Given the conclusions reached herein, the Court need not and does not consider the extraneous document filed by the DA Defendants.

## BACKGROUND

Plaintiff avers in this case[5] that on or about May 2, 2013 (Am. Compl. ¶ 47), Gordon instigated him by "rais[ing] . . . both fists to the air and ma[king] jesters [sic] of inviting the plaintiff to a fistfight . . . ." (*id*. ¶ 5). According to the "transcript" annexed to the Amended Complaint as Exhibit 2, after Gordon challenged Plaintiff to fisticuffs, Plaintiff declared, "If I have to touch [you], I have to kill [you]."[6] (Doc. 8-2, "Ex. 2" at 1; *see also id*. (suggesting that Plaintiff also told Gordon, "If I touch you, you [sic] be dead")).[7] Gordon thereafter complained to law enforcement that Plaintiff threatened to kill him. (Am. Compl. ¶¶ 47, 49). After speaking with Plaintiff, on or about May 9, 2013, Demalo filed an accusatory instrument with the Greenburgh Town Court charging Plaintiff with Harassment in the Second Degree, a violation under New York State law. (*Id*. ¶¶ 5, 58); *see also* N.Y. Penal Law § 240.26.

---

[5] A search of publicly available electronic case filings in the United States District Court for the Southern District of New York and the New York State Supreme Court, Westchester County, reveals the following cases involving Plaintiff and Gordon as parties over the last decade: (1) *Marom v. Town of Greenburgh*, No. 13-CV-04733 (S.D.N.Y.); (2) *Marom v. Pierot*, No. 18-CV-12094 (S.D.N.Y.); (3) *Pierot v. Marom*, No. 55705/2012 (Sup. Ct., Westchester Cty.); (4) *Marom v. Gordon*, No. 66441/2012 (Sup. Ct., Westchester Cty.); (5) *Marom v. Gordon*, No. 52518/2013 (Sup. Ct., Westchester Cty.); and (6) *Marom v. Gordon*, No. 56798/2013 (Sup. Ct., Westchester Cty.). The Court may "take judicial notice of filings made in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Holland v. JPMorgan Chase Bank, N.A.*, No. 19-CV-00233, 2019 WL 4054834, at *3 (S.D.N.Y. Aug. 28, 2019) (internal quotation marks omitted).

[6] Plaintiff alleged in a prior action that Gordon defamed Plaintiff by claiming that Plaintiff threatened him. *Marom v. Pierot*, No. 18-CV-12094, 2020 WL 6572509, at *2 (S.D.N.Y. Aug. 30, 2020), *adopted by* 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020). In that case, Magistrate Judge McCarthy recommended that the action be dismissed and noted that Plaintiff "admit[ted]that he told Gordon 'if I have to touch you, *I have to kill you*[.]'" (second alteration and emphasis in original).

[7] Plaintiff describes Exhibit 2 as a "transcript," but offers no elaboration as to whence it originated. It appears to be Plaintiff's attempt at transcribing a conversation between himself and Demalo recorded by Demalo's body camera footage. (Am. Compl. ¶ 5). At this juncture, the Court construes the transcript to be Plaintiff's allegation regarding the content of a conversation between himself and Demalo and accepts that allegation as true.

Plaintiff was prosecuted and convicted of Harassment in the Second Degree following a trial in the Greenburgh Town Court. (Am. Compl. ¶ 22 (referencing Plaintiff's "conviction"); *id.* ¶ 32 (alleging that ADA Johnson "secured a conviction by committing fraud on the court"); *id.* ¶ 48 (noting that the conviction was "reversed" and the case "dismissed")); *People v. Marom*, 114 N.Y.S.3d 812 (App. Term. 2019) ("Following a nonjury trial, defendant was convicted of the charge."). Plaintiff appealed the conviction and, on May 2, 2019, the Appellate Term of the New York State Supreme Court concluded:

> Viewing the evidence at trial in the light most favorable to the prosecution, we find that it was legally insufficient to establish defendant's guilt of harassment in the second degree beyond a reasonable doubt. While genuine threats of physical harm fall within the scope of the statute, an outburst, without more, does not violate the statute. In the case at bar, defendant's statement "I will kill you" did not present "a clear and present danger of some serious substantive evil" which might be forbidden or penalized, but, rather, was nothing more than a crude outburst. In the absence of additional proof evidencing "a clear and present danger," the trial proof was legally insufficient to establish defendant's guilt of harassment in the second degree beyond a reasonable doubt.

*Marom*, 114 N.Y.S.3d at 812 (internal citations omitted). The "conviction [was] reversed and the information [was] dismissed." *Id*.

Plaintiff maintains that ADA Johnson: (1) knew that Pierot's testimony conflicted with surveillance footage but allowed Pierot to offer perjured testimony; (2) withheld exculpatory evidence in contravention of New York State and federal law; and (3) introduced evidence at trial in a piecemeal and misleading fashion. (*See* Am. Compl. ¶¶ 8, 11-12, 28, 31-33, 35-37, 39-40, 42). Following his conviction, Plaintiff "filed a complaint with the [Westchester County] District Attorney's Office" about ADA Johnson's handling of the action and demanded that DA Scarpino investigate ADA Johnson's malfeasance. (Am. Compl. ¶ 13; *see also id.* ¶¶ 9, 20; Doc. 8-1

(complaint to the Westchester County District Attorney's Office copied to Pierot and the Greenburgh Town Court annexed to the Amended Complaint)). Plaintiff's attempts to learn the status of the investigation he demanded went unanswered. (*Id*. ¶¶ 9, 21).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (alteration in original)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.  Claims Against the DA Defendants

Plaintiff asserts three claims against the DA Defendants. Specifically, he seeks writs of mandamus compelling DA Scarpino to perform an investigation and prosecute alleged violations of federal law and complains that ADA Johnson violated a provision of the New York Judiciary Law. (Am. Compl. ¶¶ 16-43). These claims must be dismissed.

   A.  Writ of Mandamus

Plaintiff alleges specifically that this Court has jurisdiction to issue the writs sought under the Mandamus Act. (Am. Compl. ¶ 17 (quoting 28 U.S.C. § 1361)). This premise, on these facts, is simply incorrect.

The Court notes at the outset of this analysis that while the DA Defendants argued that the Court lacked subject-matter jurisdiction to issue the requested writs of mandamus (DA Br. at 10-11), they moved only for dismissal based on failure to state a claim under Rule 12(b)(6). (Doc. 42; *see generally* DA Br.). Although the DA Defendants did not move for dismissal based on lack of subject-matter jurisdiction under Rule 12(b)(1), Federal Rule of Civil Procedure 12(h)(3) instructs that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Court therefore considers the argument under its the inherent authority to evaluate the existence of subject-matter jurisdiction under Rule 12(h)(3). *See Strauss v. Kentucky Bd. of Med. Licensure*, No. 19-CV-6537, 2020 WL 1493963, at *2 (W.D.N.Y. Mar. 26, 2020) (dismissing the plaintiff's applications for mandamus relief against state agency *sua sponte*).

The Mandamus Act provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus *to compel an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). By

its own terms, the Mandamus Act confers jurisdiction over only officers or employees of the United States; it does not confer jurisdiction over state or local officials. *See, e.g.*, *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988) (observing that "[t]he federal courts have no general power to compel action by state officials"); *Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *5 (S.D.N.Y. Dec. 15, 2015) (dismissing plaintiff's claim for a writ of mandamus as to the Bronx County District Attorney because, *inter alia*, "a federal court cannot issue a writ of mandamus ordering a city official to act"). In short, the duly elected District Attorney of Westchester County does not fall within the ambit of the Mandamus Act and the Court lacks subject-matter jurisdiction to issue a writ of mandamus compelling that public official to act. *See generally Bellamy v. City of New York*, 914 F.3d 727, 758 (2d Cir. 2019) (noting that, subject to the exception of deciding whether to prosecute, "[u]nder New York law, DAs and ADAs are generally presumed to be local county officers, not state officers" (alteration in original, internal quotation marks omitted)); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (observing that "[w]hen prosecuting a criminal matter, a district attorney in New York State . . . represents the State not the county").

Consequently, the first and second claims for relief are dismissed for want of subject-matter jurisdiction under Rule 12(h)(3) and DA Scarpino is dismissed as a Defendant from this action.

    B. <u>New York Judiciary Law § 487</u>

The only other claim for relief against the DA Defendants, a violation of New York State Judiciary Law § 487, is pressed against ADA Johnson only. (Am. Compl. at 8-12).[8] This statute, among other things, "provides for treble damages for attorneys who are 'guilty of any deceit or

---

[8] To the extent Plaintiff relies upon a purported violation of the American Bar Association's Model Rules of Professional Conduct (*see* Am. Compl. ¶¶ 32, 41), the claim must be dismissed because those rules "do not create private rights of action for alleged attorney misconduct." *Kalola v. Int'l Bus. Machs. Corp.*, No. 19-CV-9900, 2019 WL 6879307, at *4 (S.D.N.Y. Dec. 16, 2019).

collusion.'" *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 259 (S.D.N.Y. 2011) (quoting N.Y. Jud. Law § 487(1)), *aff'd*, 512 F. App'x 45 (2d Cir. 2013). As noted above, Plaintiff asserts that ADA Johnson violated this law by knowingly allowing Pierot to offer perjured testimony, withholding exculpatory evidence, and introducing evidence in a piecemeal fashion. (*See* Am. Compl. ¶¶ 8, 11-12, 28, 31-33, 35-37, 39-40, 42). The DA Defendants argue that this claim must be dismissed because ADA Johnson is shielded by absolute immunity. (DA Br. at 12). The Court agrees.

"[A] prosecutor is entitled to absolute immunity for actions taken within the scope of his or her official duties in initiating and pursuing a criminal prosecution and in presenting the People's case, but a prosecutor is entitled only to qualified immunity when acting in an investigatory capacity." *Crooks v. City of New York*, 136 N.Y.S.3d 158, 161 (App. Div. 2020) (quoting *Blake v. City of New York,* 51 N.Y.S.3d 540, 544 (App. Div. 2017) (alteration in original)); *see also Johnson v. Kings Cty. Dist. Attorney's Office*, 763 N.Y.S.2d 635, 640 (App. Div. 2003) (concluding that prosecutors "are immune from civil liability for activities intimately associated with the judicial phase of the criminal process, meaning initiating a prosecution and in presenting the State's case" (internal quotation marks omitted)). However, under New York law, this "absolute immunity extends not only to the prosecutorial function, but to numerous public functions involving the exercise of discretion in a judicial or quasi-judicial nature." *Rudow v. City of New York*, 822 F.2d 324, 329 (2d Cir. 1987) (internal citations omitted). "The focus is on the conduct for which immunity is claimed." *Kirchner v. Cty. of Niagara*, 969 N.Y.S.2d 277, 282 (App. Div. 2013) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)).[9]

---

[9] As the claim is one under New York State law—as opposed to a theory under 42 U.S.C. § 1983—the Court applies New York's principles of prosecutorial immunity. However, it bears noting that the analysis would be the same under federal law, as "[p]rosecutors' immunity under state law is identical to their immunity under § 1983 . . . ." *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013).

Here, Plaintiff's allegations concern ADA Johnson's decisions pertaining to offering witness testimony and the handling of evidence—all acts "intimately associated with the judicial phase of the criminal process" and, as such, entitled to absolute immunity. *See Blake v. City of New York*, 51 N.Y.S.3d 540, 544 (App. Div. 2017) ("[T]he complaints allege activities in processing criminal charges after the plaintiffs' arrest by police based upon evidence assembled by police. Therefore, the District Attorney defendants are entitled to absolute immunity."); *Spinner v. Cty. of Nassau*, 962 N.Y.S.2d 222, 224 (App. Div. 2013) (concluding that prosecutors' actions "concerned investigation in the course of pretrial preparation and, thus" were protected by absolute immunity); *Cunningham v. State*, 431 N.Y.S.2d 178, 180 (App. Div. 1980) (noting that the "concealment, suppression and falsification of evidence and the use or attempted use of perjured testimony" are all acts "protected by absolute prosecutorial immunity"), *modified on other grounds by* 422 N.E.2d 821 (N.Y. 1981); *Friedman v. Rice*, 5 N.Y.S.3d 816, 822 (Sup. Ct. 2015) ("Prosecutors enjoy absolute immunity for all actions relating to their advocacy, regardless of motive." (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994))); *see also Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (noting that "[a] prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information" (internal quotation marks omitted)).

Based upon the foregoing, ADA Johnson is entitled to prosecutorial immunity for the conduct Plaintiff claims is violative of Judiciary Law § 487. Accordingly, the third claim for relief

is dismissed and ADA Johnson is dismissed as a Defendant from this action.[10] *See Rudow*, 822 F.3d at 329 (concluding that Judiciary Law § 487 does not apply to prosecutors because they "are not merely attorneys, and it is not even remotely likely that the New York courts would hold prosecutors personally liable for actions taken as prosecutors under a statute directed at attorneys generally"); *Hurley v. Town of Southampton*, No. 17-CV-5543, 2018 WL 3941944, at *24 (E.D.N.Y. Aug. 13, 2018) (concluding that the claim under § 487 against the town attorney was barred by prosecutorial immunity).[11]

## II. Claims Against Gordon

Turning to Gordon, Plaintiff asserts two variants of a single claim against this Defendant. Specifically, Plaintiff presses one claim for malicious prosecution under 42 U.S.C. § 1983 and another for malicious prosecution under New York State law. (Am. Compl. ¶¶ 44-54). Plaintiff seeks "[j]udgment for $100,000 compensatory damages and treble punitive damages" against Gordon and the Town Defendants in connection with this claim for relief. (*Id*. ¶ 54). Gordon insists that these twin claims must be dismissed under Rule 12(b)(6). (Gordon Br. ¶ 2). The Court agrees.

---

[10] In addition to monetary damages, Plaintiff seeks "a declaratory judgment against" ADA Johnson stating that she "committed a fraud on the Court" and "induced and tempered [sic] with a witness to deliver false testimony." (Am. Compl. ¶¶ 43, b-c). While prosecutorial immunity "does not bar the granting of injunctive relief," *Shmueli*, 424 F.3d at 329, simply "ask[ing] the Court only to recognize a past wrong . . . in the context of declaratory relief, does not in itself amount to that real and immediate threat of injury necessary to make out a case or controversy," *Morales v. City of New York,* 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Murdock v. Legal Aid Soc'y*, No. 14-CV-0508, 2015 WL 94245, at *4 (E.D.N.Y. Jan. 6, 2015) ("[C]ourts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs." (internal quotation marks omitted)).

[11] This Report and Recommendation was adopted by the U.S. District Court for the Eastern District of New York in its entirety by an electronic text-only Order docketed in that case on September 21, 2018. *Hurley*, No. 17-CV-5543, Sept. 21, 2018 Doc. Entry.

### A. Malicious Prosecution Under 42 U.S.C. § 1983

The elements of a claim for malicious prosecution under 42 U.S.C. § 1983 are substantially the same as the elements of that claim under New York State law, *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *10 (S.D.N.Y. Dec. 18, 2020) (observing that a claim for malicious prosecution under § 1983 merely adds one additional element to the New York State claim for relief), but 42 U.S.C. § 1983 requires that the defendant against whom a claim is stated qualify as a government actor. That statute provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. As such, courts require that any permutation of a claim invoking that law "demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor.'" *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012)). Gordon argues that the action against him under 42 U.S.C. § 1983 must be dismissed because he is not a state actor. (*See* Gordon Br. ¶¶ 39, 43). The Court agrees.

"It is axiomatic that private citizens and entities are not generally subject to § 1983 liability." *Moroughan v. Cty. of Suffolk*, No. 12-CV-0512, 2021 WL 298714, at *16 (E.D.N.Y. Jan. 20, 2021). Under Second Circuit precedent, "an otherwise private person acts under color of state law only if he or she conspir[es] with state officials to deprive another of federal rights." *Kash v. Honey*, 38 F. App'x 73, 76 (2d Cir. 2002) (alterations in original, internal quotation marks omitted). "In order to establish that a private individual conspired for purposes of § 1983, a plaintiff

12

must show that (1) there was an agreement between the individual and a state actor, (2) to act in concert to inflict an unconstitutional injury, and (3) there was an overt act done in furtherance of that goal causing damages." *Bornschein v. Herman*, 304 F. Supp. 3d 296, 300-01 (N.D.N.Y. 2018) (internal quotation marks omitted); *see also Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) ("In final analysis the question is whether 'the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State.'" (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 199 (1988) (alteration in original))).

There is no allegation that Gordon is a government actor subject, *ipso facto*, to 42 U.S.C. § 1983. As such, the question is whether Plaintiff pled sufficiently that Gordon "conspired" with government actors to violate Plaintiff's federal rights. He has not done so.

Plaintiff pled that Gordon: (1) resented Plaintiff and wanted to harm Plaintiff's reputation (Am. Compl. ¶ 45); (2) conferred with law enforcement officials before filing a complaint (*id.* ¶ 47); and (3) gave a sworn statement that Plaintiff "willfully, unlawfully, and maliciously . . . threat[ened] to kill him," which, Plaintiff concedes, he did do (*id.* ¶ 49; Ex. 2 at 1; Gordon Opp. at 2). These barebones allegations do not plead the existence a conspiracy between Gordon and government actors to deprive Plaintiff of a federal right. *See, e.g.*, *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (finding allegations insufficient to state a private actor's liability under 42 U.S.C. § 1983); *Bornschein*, 304 F. Supp. 2d at 301 ("As pleaded, the Complaint offers no more than insufficient conclusory allegations of conspiracy.").

As Plaintiff has not pled facts establishing that Gordon conspired with government actors to deprive Plaintiff of his federal rights, the § 1983 malicious prosecution claim is dismissed to the extent it is asserted against Gordon.

B. <u>Malicious Prosecution Under New York Law</u>

The only other claim for relief against Gordon is one for malicious prosecution under New York State law. That claim requires Plaintiff to plead: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)). On this claim Gordon argues, *inter alia*, that Plaintiff has not pled that Gordon initiated or continued the criminal proceeding. (*See* Gordon Br. ¶ 44).[12] The Court agrees.

"Under New York law, '[i]n order for a civilian complainant to be considered to have initiated a criminal proceeding, it must be shown that the complainant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Lanning v. City of Glens Falls*, No. 16-CV-00132, 2017 WL 922058, at *6 (N.D.N.Y. Mar. 8, 2017) (quoting *Fiedler v. Incandela*, 222 F. Supp. 23d 141, 162 (E.D.N.Y. 2016) (alteration in original)), *aff'd*, 908 F.3d 19 (2d Cir. 2018). Moreover, "[a] civilian defendant who merely furnishes information to law enforcement authorities, who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed, will not be held liable for . . . malicious prosecution." *Williston v. Jack Resnick & Sons, Inc.*, 110 N.Y.S.3d 307, 308 (App. Div. 2019) (quoting *Johnson v. Follett Higher Educ. Group, Inc.*, 979 N.Y.S.2d 393, 394 (App. Div. 2014)). "However, 'New York law has long equated the civil defendant's

---

[12] While the parties do not seem to disagree over whether the Appellate Term's decision was a termination in Plaintiff's favor, Gordon does argue that Plaintiff failed to plead probable cause or the existence of actual malice. (*See* Gordon Br. ¶¶ 38, 42-43). Given the Court's conclusion as to whether Gordon initiated the proceeding—the first element of the claim—the Court need not and does not reach the other issues.

14

failure to make a full and complete statement of the facts to the District Attorney or the court, or holding back information that might have affected the results, with that defendant's initiation of a malicious prosecution.'" *Bah v. Apple Inc.*, No. 19-CV-3539, 2020 WL 614932, at *13 (S.D.N.Y. Feb. 10, 2020) (quoting *Ramos v. City of New York*, 729 N.Y.S.2d 678, 690 (App. Div. 2001)). This Court's analysis, then, concerns whether Plaintiff alleged that Gordon initiated or continued the proceeding under this rubric. The Court concludes that Plaintiff has not done so.

The allegations as to Gordon are, in actuality, very sparse. For example, while Plaintiff argues that Gordon initiated the action (Gordon Opp. at 6), he alleged specifically that Demalo filed the accusatory instrument that initiated the underlying criminal proceedings in the Greenburgh Town Court. (Am. Compl. ¶¶ 5, 10, 48; *see also* Gordon Opp. at 2 (arguing that Demalo "filed the bogus criminal complaint that was based [sic] no more than his 'psychic' power to know what peoples' intentions are")). After Plaintiff admitted telling Gordon, "if I have to touch [you], I have to kill [you]," Demalo advised Plaintiff, "I am going to take everything I have and show it to the district attorney if he wants to prosecute it, [sic] and will give you a call." (Ex. 2 at 2). Upon review of the information thereafter—which, in addition to Gordon's statement and speaking with Demalo, included a statement from Pierot and surveillance footage—ADA Johnson withheld exculpatory evidence and presented perjured testimony to pursue the criminal action commenced by Demalo and secure Plaintiff's conviction. (*See* Am. Compl. ¶¶ 26-43).

In contrast to Demalo and ADA Johnson, Gordon's role is limited. As pled, Gordon hated Plaintiff, conferred with police before filing a complaint, and gave a statement that Plaintiff "threat[ened] to kill him," which Plaintiff admits doing. (*Id.* ¶¶ 45, 47, 49; Ex. 2 at 1; Gordon Opp. at 2). These facts are insufficient to allege that Gordon initiated the criminal proceeding. *See, e.g.*, *Krzyzak v. Schaefer*, 860 N.Y.S.2d 252, 253 (App. Div. 2008) (affirming summary judgment, as

15

"the record demonstrates nothing more than defendant furnishing information regarding the incident to the police and signing a complaint against plaintiff" (collecting cases)); *Lupski v. Cty. of Nassau*, 822 N.Y.S.2d 112, 114 (App. Div. 2006) ("The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." (internal quotation marks omitted)); *Paisley v. Coin Device Corp.*, 773 N.Y.S.2d 582, 583 (App. Div. 2004) ("Here, the appellants merely provided information to the police. The decision to arrest and charge . . . was made solely by the police."); *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141, 146 (App. Div. 2002) (providing information and signing a criminal complaint are insufficient to support a claim).

As Plaintiff has not pled facts sufficient to show that Gordon initiated the criminal proceeding, Plaintiff failed to state the claim for malicious prosecution under New York State law against Gordon. Consequently, the fourth claim for relief is dismissed as to Gordon and Gordon is dismissed as a Defendant from this action.[13]

---

[13] Gordon argued also that the claim for malicious prosecution under New York State law was untimely. (Gordon Br. ¶¶ 30-36). The Court disagrees. The Appellate Term reversed Plaintiff's conviction on May 2, 2019. *See Marom*, 114 N.Y.S.3d at 812. Assuming without deciding that the reversal of conviction qualified as a termination in Plaintiff's favor, the statute of limitations began to run that day, *Dudick v. Gulyas*, 716 N.Y.S.2d 407, 410 (App. Div. 2000), and the action had to be commenced within one year, N.Y. C.P.L.R. § 215(3). One year from May 2, 2019 is May 2, 2020—a Saturday—so the statute of limitations expired on Monday, May 4, 2020. N.Y. Gen. Constr. § 25-a(1). The Complaint was docketed on May 5, 2020 but is stamped "Received" on May 4, 2020. (Doc. 1 at 1). The action was, therefore, timely commenced. *See Toliver v. Sullivan Cty.*, 841 F.2d 41, 42 (2d Cir. 1988) (explaining that the date of receipt of *pro se* papers by the *Pro Se* Office is the date for calculating the statute of limitations).

## CONCLUSION

Based upon the foregoing, the motions to dismiss are GRANTED. The first, second, and third claims for relief are dismissed in their entirety and the fourth claim for relief is dismissed insofar as it seeks relief against Gordon. DA Scarpino, ADA Johnson, and Gordon are dismissed from this action. The Court shall issue an Initial Pretrial Conference Order in short order.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Docs. 32 and 42.

**SO ORDERED:**

Dated: White Plains, New York
March 1, 2021

_____
PHILIP M. HALPERN
United States District Judge