UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL MAROM,

                    Plaintiff,

          -against-

TOWN OF GREENBURGH and DETECTIVE
EDGAR DEMELO,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-03486 (PMH)

PHILIP M. HALPERN, United States District Judge:

Michael Marom ("Plaintiff"), proceeding *pro se*, initiated this action under 42 U.S.C. §
1983 on May 5, 2020. (Doc. 1). Plaintiff maintains in his First Amended Complaint ("FAC"), the
operative pleading, that his constitutional rights were violated in connection with criminal
proceedings commenced against him stemming from comments he made to his neighbor. (*See*
Doc. 8, "FAC"). Plaintiff's remaining claims for relief are: (i) malicious prosecution against
Detective Edgar DeMelo ("DeMelo")[1] under 42 U.S.C. § 1983 and New York State law; and (ii)
a *Monell* claim against the Town of Greenburgh ("Town" and together with DeMalo,
"Defendants") concerning the deprivation of his constitutional rights. (*Id*. ¶¶ 88-123).

Pending presently before the Court are: (i) the parties' cross-motions for summary
judgment and (ii) Plaintiff's motion to add a party. Defendants filed their motion for summary
judgment on April 29, 2022. (Doc. 82; Doc. 84; Doc. 86, "Def. Br."). Plaintiff cross-moved for
summary judgment and opposed Defendant's summary judgment motion by memorandum of law
filed on June 6, 2022. (Doc. 89, Doc. 92, "Pl. Br."). The cross-motions for summary judgment
were briefed fully with the filing of Defendants' reply memorandum of law on June 24, 2022.

---

[1] Defendant DeMelo is incorrectly named as "Ed Demalo" in the FAC.

(Doc. 97, "Def. Reply"). Plaintiff filed a motion to add a party on June 6, 2022. (Doc. 88). Defendants opposed that motion by memorandum of law filed on July 29, 2022 (Doc. 105), and the motion to add a party was fully briefed with the filing of Plaintiff's reply memorandum of law on August 1, 2022 (Doc. 105).

For the reasons set forth below, Plaintiff's motion to add a party is DENIED, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

I.   Relevant Procedural History

Plaintiff's original Complaint named four defendants: the Town, DeMelo, Courtney Johnson ("Johnson"), and Mark Gordon ("Gordon"). (Doc. 1). The FAC added Anthony Scarpino, Jr. ("Scarpino") and Audrey Pierot ("Pierot") as defendants. (*Id.*). The Court granted a motion by Defendants Gordon, Johnson, and Scarpino to dismiss the FAC as alleged against them on March 2, 2021 (Doc. 49), and the case proceeded to discovery against the Town and DeMelo.[2] Discovery closed on September 15, 2021. (Doc. 54).

II.   Relevant Factual Background

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from: (1) the FAC; (2) Defendants' Rule 56.1 Statement (Doc. 83, "Def. 56.1"); (3) the Declaration of Thomas J. Troetti in Support of the Motion for Summary Judgment and the exhibits attached thereto (Doc. 87, "Troetti Decl."); (4) Plaintiff's Rule 56.1 Statement (Doc. 91, "Pl. 56.1"); and (5) Plaintiff's Declaration in Opposition to the

---

[2] On April 7, 2021, the Court held an initial pretrial conference during which Plaintiff advised that Pierot was mistakenly named as a defendant in this action. Based upon Plaintiff's representations, the Court dismissed Pierot from this action. (Doc. 51).

Motion for Summary Judgment and the exhibits attached thereto (Doc. 93, "Pltf. Decl."). Unless otherwise indicated, the following facts are undisputed.

      A      <u>Detective DeMelo's Investigation</u>

Plaintiff purchased a vacant lot in the Town of Greenburgh, New York sometime in September or October of 2009 with the intention of building a house for himself and his wife. (Def. 56.1 ¶¶ 2-5). Tensions arose between Plaintiff and his neighbors soon after construction began, resulting in the filing of dozens of complaints with the Greenburgh Police Department accusing Plaintiff of destroying his neighbors' property with his construction machinery. (*Id.* ¶ 8). The Greenburgh Police Department responded to calls by Plaintiff's neighbors on a regular basis. (*Id.* ¶¶ 10-11). From July 13, 2010 to May 2, 2013, there were a total of 57 incident reports generated from the calls for police service at Plaintiff's lot. (*Id.*). As a result of the frequent calls for police service, a pole camera was installed across from Plaintiff's lot sometime in 2011. (*Id.* ¶ 12).

One of Plaintiff's neighbors—Gordon—reported to the Greenburgh Police Department on May 3, 2013 that he had been threatened by Plaintiff the day before. (*Id.* ¶ 14). DeMelo interviewed Gordon about the incident. (*Id.* ¶ 16). Gordon reported, during the interview, that on May 2, 2013, he informed Plaintiff that he witnessed construction workers on Plaintiff's lot publicly urinating. (*Id.* ¶ 17). Gordon reported that in response, Plaintiff said "you are a stupid ass, and do you know what I am capable of, I will kill you." (*Id.* ¶ 23). Gordon further reported that Plaintiff's arms were raised, as if appearing "to get ready for a fight," and described Plaintiff's behavior as threatening. (*Id.* ¶¶ 21, 26). DeMelo typed up Gordon's statement, provided him with an opportunity to review, and Gordon signed the written statement. (*Id.* ¶ 25).

Gordon informed DeMelo during the interview that he was scheduled to testify on behalf of the Westchester County District Attorney's Office in its prosecution of Plaintiff for having

slapped Deborah Salerno, another one of Plaintiff's neighbors, in the face. (Id. ¶ 27). When taking Gordon's statement, DeMelo was already aware that Plaintiff had been arrested in February 2012 for slapping Ms. Salerno and was aware that the slapping incident—which took place in the lobby of Greenburgh Town Hall—was captured on surveillance video. (*Id.* ¶ 28).

DeMelo interviewed two other eyewitnesses, both of whom provided signed statements: Gordon's wife, Pierot, and Rocco Salerno, who resided across the street. Pierot reported that she heard Plaintiff yelling at her husband and exited her house, where she observed Plaintiff yelling "you don't know what I am capable of, I will kill you," and that Plaintiff was "leaning toward Gordon as if he was getting ready to fight." (*Id.* ¶ 32). Rocco Salerno reported that he also heard a "loud argument" and that he "clearly heard [Plaintiff] say to [Gordon], "I will kill you." (*Id.* ¶ 33).

DeMelo was also aware of many of the calls for police service at Plaintiff's lot, including several calls arising out of Plaintiff threatening use of a construction vehicle. (*Id.* ¶ 39). DeMelo reviewed police reports involving the escalating threats and acts of physical violence alleged to have been committed by Plaintiff. (*Id.* ¶ 39). Examples of these violent acts documented in police reports include: one instance when Plaintiff drove his construction vehicle at Pierot and turned away at the last second; and another instance when Plaintiff drove his construction vehicle straight at Pierot, forcing her to jump out of the way to avoid being hit. (*Id*. ¶ 40). DeMelo then went to Plaintiff's lot and spoke to Plaintiff. (*Id.* ¶¶ 42-43). When asked what Plaintiff said to Gordon, Plaintiff confirmed that he had an argument with Gordon and that he told Gordon, that "if I have to touch you, I will kill you." (*Id.* ¶ 44).

B.    Criminal Proceedings Against Plaintiff

DeMelo prepared an incident report, including the written statements of Gordon, Pierot, and Salerno, which he provided to the Office of the Westchester County District Attorney. (*Id.* ¶¶

52-53). Plaintiff was served with an Appearance Ticket to appear in Greenburgh Town Court on May 14, 2013, on a charge of Harassment in the Second Degree. (*Id.* ¶ 51). Plaintiff appeared in Greenburgh Town Court before Town Justice Brathwaite on May 14, 2013, at which time he was arraigned and entered a plea of not guilty. (*Id.* ¶ 54). At the arraignment, Town Justice Brathwaite issued a Temporary Order of Protection in favor of Gordon, as a condition of releasing Plaintiff on his own recognizance. (*Id.* ¶ 55). The Temporary Order of Protection prohibited Plaintiff from "communicating with Gordon." (*Id.* ¶ 66).

On September 22, 2014, Gordon contacted the Greenburgh Police Department to report that Plaintiff violated the Order of Protection. (*Id.* ¶ 58). Gordon observed Plaintiff, while walking on Gordon's driveway, make an obscene gesture at him by extending his middle finger and then telling Gordon to "[g]o back to your fucking home." (*Id.* ¶ 59). DeMelo was assigned to investigate the circumstances of Gordon's report. (*Id.* ¶ 60). DeMelo interviewed Pierot, reviewed video clips from Gordon's home surveillance system, and reviewed video surveillance taken from the pole camera across from Plaintiff's lot, all of which corroborated Gordon's report. (*Id.* ¶¶ 61-64). Plaintiff was subsequently arraigned in Greenburgh Town Court on the charge of Criminal Contempt in the Second Degree on October 14, 2014. (*Id.* ¶ 69).

Plaintiff was found guilty of Harassment in the Second Degree on February 28, 2018. (*Id.* ¶ 73). Plaintiff was found guilty of Criminal Contempt in the Second Degree for violation of the Order of Protection on November 29, 2018. (*Id.* ¶ 79). Plaintiff's conviction for Harassment in the Second Degree was reversed on appeal on May 2, 2019. (*Id.* ¶¶ 81-84). The appellate court held that the evidence at trial "was legally insufficient to establish [Plaintiff's] guilt of harassment in the second degree beyond a reasonable doubt." (*Id.* ¶ 84). Plaintiff's conviction for Criminal Contempt in the Second Degree was affirmed by the appellate court on July 22, 2021. (*Id.* ¶ 85).

## STANDARD OF REVIEW

I.   Motion to Add a Party

Federal Rule of Civil Procedure 21 governs motions to add a party. "In analyzing a request to add a party under Rule 21, the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 256 (S.D.N.Y. 2013). "[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although delay alone does not warrant denial, *see State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981), a court "plainly has discretion to deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant,'" *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)).

Moreover, Federal Rule of Civil Procedure 16(b) provides that scheduling orders "must limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). Once entered, a scheduling order may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4). "Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16). The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order. *Parker*

*v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party.").

II.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all

reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v.*

*George*, No. 18-CV-02630, 2020 WL 5504472, at \*5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment. A *pro se* litigant must offer more than bald assertions, completely unsupported by evidence to overcome the motion. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment").

## **ANALYSIS**

I.   <u>Plaintiff's Motion to Add a Party</u>

Plaintiff filed, on June 6, 2022, a motion seeking to add former Town Police Chief Christopher McNerney ("McNerney") as a party to this action. (Doc. 88).

The Civil Case Discovery Plan and Scheduling Order entered in this case provides that the time for the parties to file amended pleadings ended May 7, 2021. (Doc. 54). Discovery in this matter closed on September 15, 2021, approximately nine months before Plaintiff moved to add McNerney as a party. (*Id.*). Plaintiff offers no explanation for the significant and undue delay in bringing the motion to add McNerney as a party beyond asserting that he "was not aware of the superior liability responsibility doctrine" when drafting the Complaint. (Doc. 105). Adding a party now would require re-opening discovery and staying consideration of the pending cross-motions for summary judgment, thereby prejudicing Defendants at this late stage of the litigation. Plaintiff cannot make the requisite showing of good cause to modify the operative scheduling order and allow the belated motion to add a party.

Accordingly, Plaintiff's motion to add McNerney as a party is DENIED.

II.   <u>Summary Judgment</u>

A.   <u>Malicious Prosecution</u>

To establish a claim for malicious prosecution under Section 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York State law, as well as a violation of the plaintiff's rights under the Fourth Amendment.[3] *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010). A claim for malicious prosecution requires "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Lewis v. Westchester Cnty.*, No. 20-CV-09017, 2022 WL 1448676, at *4 (S.D.N.Y. May 9, 2022) (citing *Manganiello*, 612 F.3d at 161). With respect to the second element, the Supreme Court recently clarified that a claim for malicious prosecution under Section 1983 "does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). Rather, a plaintiff "need only show that the criminal prosecution ended without a conviction." *Id.* To prevail on a malicious prosecution claim under Section 1983, "a plaintiff also must demonstrate 'a sufficient post-arraignment liberty restraint'" to implicate the plaintiff's Fourth Amendment rights. *Kee v. City of New York*, 12 F.4th 150, 162 (2d Cir. 2021) (citing *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

Plaintiff was subjected to two separate criminal proceedings: one for Harassment in the Second Degree, and another for Criminal Contempt in the Second Degree. However, *Heck v.*

---

[3] Plaintiff brings his malicious prosecution claim under both 42 U.S.C. § 1983 and New York State law. However, "[t]he elements of a claim or malicious prosecution under 42 U.S.C. § 1983 are substantially the same as the elements of that claim under New York State law." *Marom v. Town of Greenburgh*, 2021 WL 797648, at *6 (S.D.N.Y. Mar. 2, 2021) (citing *Ventillo v. Falco*, 19-CV-03664, 2020 WL 7496294, at *10 (S.D.N.Y. Dec. 18, 2020)).

*Humphrey* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." 512 U.S. 477 (1994). While Plaintiff's conviction for Harassment in the Second Degree was reversed on appeal, his conviction for Criminal Contempt was affirmed. (Def. 56.1 ¶ 85). Plaintiff is, as such, barred from recovering for malicious prosecution to the extent that his claim rests on his conviction for Criminal Contempt in the Second Degree.

With respect to Plaintiff's Criminal Harassment conviction, Defendants argue they are entitled to summary judgment because probable cause existed to prosecute Plaintiff. "The existence of probable cause is a complete defense to a claim of malicious prosecution." *Manganiello*, 612 F.3d at 161-62. "In the malicious prosecution context, probable cause is defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Diop v. City of New York*, 50 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)). "[P]robable cause to prosecute 'is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest.'" *Hughes v. City of New York*, 18-CV-09380, 2021 WL 4295209, at *7 (S.D.N.Y. Sept. 21, 2021), (quoting *Sankar v. City of New York*, 867 F. Supp. 2d 297, 311 (E.D.N.Y. 2012)). "Generally, an inculpatory statement from an eyewitness suffices to establish probable cause and defeat claims for malicious prosecution, false arrest, and false imprisonment." *Reid v. New York City Police Dep't*, 19-CV-1220, 2019 WL 1271645, at *2 (E.D.N.Y. Mar. 18, 2019) (citing *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015)).

Plaintiff was charged with Harassment in the Second Degree pursuant to New York Penal Law § 240.26(1). (Def. 56.1 ¶ 73). Pursuant to New York Penal law § 240.26(1), "a person is

guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person, he or she strikes, shoves, kicks, or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. Penal L. § 240.26(1). Probable cause for a charge of Harassment in the Second Degree exists where an officer relies on statements from the victim, other eyewitnesses, or a criminal defendant's admission that he was involved in the accused altercation. *See Hughes v. City of New York et al.*, No. 18-CV-09380-MKV, 2021 WL 4295209, at *8 (S.D.N.Y. Sept. 21, 2021) (holding probable cause existed for a charge of Harassment in the Second Degree where defendants relied on "statements of [the victim] and eyewitnesses and [p]laintiff's admission that he was involved in the fight"); *Mars v. City of New York*, Nos. 01–278, 01–279, 2002 WL 83697, at *1 (N.Y. 1st Dep't Jan. 8, 2002) (per curiam) (granting summary judgment on a malicious prosecution claim where complainant's statements and plaintiff's admissions of involvement in dispute established probable cause). An individual charged with Harassment in the Second Degree "may be presumed to intend the natural and probable consequences of his actions and intent may be inferred from the totality of the conduct of the accused." *United States v. Miller*, 567 F. App'x 45, 46 (2d Cir. 2014).

It is undisputed that DeMelo's investigation revealed that Plaintiff and Gordon had a verbal encounter on May 2, 2013, during which Plaintiff uttered "I will kill you." (Def. 56.1 ¶ 23). DeMelo received three eyewitness statements—from Gordon, Pierot, and Rocco Salerno—stating Plaintiff initiated the altercation with Gordon and acted in a threatening manner when telling Gordon that he would kill him. (*Id.* ¶¶ 21-33). Gordon informed DeMelo that before threatening to kill him, Plaintiff "stood right in front of [his] face, about 6 inches, in a very threatening manner" and that Plaintiff "was leaning into me and appeared that he was getting ready for a fight." (Troetti Decl., Ex. C). Pierot confirmed Gordon's account during her interview with DeMelo, noting that

she saw Plaintiff "leaning towards [Gordon] and it looked like [Plaintiff] was getting ready to fight." (*Id.*, Ex. D). Yet another one of Plaintiff's neighbors, Rocco Salerno, confirmed Gordon's account during his interview with DeMelo. (*Id.*, Ex. E). Mr. Salerno recounted to DeMelo that he witnessed Plaintiff threaten to kill Gordon and that during this threat Plaintiff "was in [Gordon's] face while standing in a very aggressive posture." (*Id.*). That Plaintiff now disputes the underlying events that were the subject of these eyewitness accounts is not relevant to the probable cause inquiry because the only relevant facts are those "available to the officer at the time of the arrest." *Caldarola v. Calabrese*, 298 F. 3d 156, 162 (2d Cir. 2002). Plaintiff does not dispute that these eyewitness accounts were provided to DeMelo in his investigation, nor does he dispute that DeMelo had knowledge of the escalating and sometimes violent nature of altercations between Plaintiff and his neighbors. (Def. 56.1 ¶¶ 39-44).[4]

The statements DeMelo received from Gordon, Pierot, and Rocco Salerno all indicate that Plaintiff threatened to kill Gordon while speaking to him in an aggressive manner, as if getting ready to fight. (Def. 56.1 ¶¶ 18-33). DeMelo learned that Plaintiff had already struck another one of his neighbors, Deborah Salerno, in the face and reviewed the surveillance video of that incident. (*Id.* ¶ 35). DeMelo reviewed the 57 incident reports generated by calls to the police made by Plaintiff's neighbors during a 3-year period. (*Id.* ¶ 39). Included in these incident reports were complaints that Plaintiff tried to run Periot over with one of his construction vehicles. (*Id.* ¶ 40). When considering the totality of these circumstances, it was reasonable for DeMelo to conclude that Plaintiff threatened to "strike[], shove[], kick[] or otherwise subject [Gordon] to physical

---

[4] To the contrary, Plaintiff readily admits that 57 police reports were filed by Plaintiff's neighbors between July 13, 2010 and May 2, 2013. (Def. 56.1 ¶ 11). Plaintiff further admits that the dispute with his neighbors necessitated the installation of a pole camera by the Greenburgh Police Department across from his lot. (*Id.* ¶ 12). DeMelo was aware of both of these facts at the time of his investigation. (*Id.* ¶ 34).

contact" and did so "with an intent to harass, annoy, or alarm" him. N.Y. Penal L. § 240.26(1). The information DeMelo received in his investigation clearly provided probable cause to charge Plaintiff with Harassment in the Second Degree.

Accordingly, summary judgment is GRANTED in Defendants' favor with regards to Plaintiff's claim for malicious prosecution.[5]

B. _Monell_ Claim

By proceeding against the Town under 42 U.S.C. § 1983, the Court construes the FAC to press a _Monell_ claim against the Town for a violation of Plaintiff's speedy trial right. (FAC ¶¶ 55-62). Such a claim requires that Plaintiff establish: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." _Lockett v. City of Middletown_, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (quoting _Triano v. Town of Harrison, New York_, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)). Plaintiff declined to respond to Defendants' arguments on the _Monell_ claim. The Court will, therefore, consider the claim for relief abandoned. _See Layne v. Panzarella_, No. 19-CV-04531, 2022 WL 2343184, at *7 n.8 (S.D.N.Y. June 29, 2022) (holding that a plaintiff's medical indifference claim was abandoned when plaintiff declined to respond to defendant's arguments on a motion for summary judgment); _Murtha v. New York State Gaming Comm'n._, No. 17-CV-10040, 2022 WL 784756, at *7 n.7 (S.D.N.Y. Mar. 15, 2022) (concluding that the plaintiff waived objection by failing to raise it in his opposition brief); _In re UBS AG Secs. Litig._, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by that it fails to address).

Even if Plaintiff did not abandon his _Monell_ claim here, such a claim, "cannot lie in the

---

[5] Given the conclusions reached herein, the Court need not and does not address Defendants' arguments regarding qualified immunity.

absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at \*9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at \*6 (S.D.N.Y. June 13, 2017)). Plaintiff presses his *Monell* claimed based upon the alleged violation of his speedy trial right. However, the "sole remedy" for an alleged violation of the speedy trial right the "dismissal of charges." *Betterman v. Montana*, 578 U.S. 437 (2016). No civil remedy exists for such a constitutional violation.

Furthermore, summary judgment in favor of Defendants is warranted on this claim because Plaintiff has not established any underlying constitutional violation for which a civil remedy is available pursuant to § 1983. Because Plaintiff is unable to establish an underlying violation of his constitutional rights, his *Monell* claim necessarily fails as a matter of law.[6] *See, e.g., Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Accordingly, the Court GRANTS summary judgment in Defendants' favor and dismisses Plaintiff's *Monell* claim against the Town.

---

[6] Plaintiff's *Monell* claim also fails "for lack of facts supporting the existence of a municipal policy or practice, because Plaintiff only alleges facts relating to his own claim." *Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at \*9 (S.D.N.Y. July 20, 2022); *see also Smith v. Westchester Cnty.*, No. 19-CV-01283, 2019 WL 5816120, at \*5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at \*4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where Plaintiff "only a detailed account of their own experiences").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion to add a party is DENIED, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 82, Doc. 84, Doc. 88, Doc. 89, and close this case.

**SO ORDERED.**

Dated:    White Plains, New York
          December 12, 2022

_____
PHILIP M. HALPERN
United States District Judge